UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANNA G.,[1]

                                                   Plaintiff,          Case # 20-CV-635-FPG

v.                                                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,
                                                Defendant.
_____

## INTRODUCTION

      Plaintiff Anna G. protectively applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") on or about August 2, 2016, alleging disability beginning March 1, 2015. Tr.[2] 12, 153-59. After the Social Security Administration ("SSA") denied her claim, Plaintiff appeared, with a non-attorney representative, at a hearing on March 21, 2019, before Administrative Law Judge Asad M. Ba-Yunus (the "ALJ"). Tr. 27-76. Plaintiff and a vocational expert testified. On April 2, 2019, the ALJ issued an unfavorable decision. Tr. 10-17. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[3] ECF No. 1.

      The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 7, 8. Plaintiff filed a reply. ECF No. 9. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED. The ALJ's decision is AFFIRMED.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 6.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

1

**LEGAL STANDARD**

I. **District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

II. **Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**I.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in gainful activity from March 1, 2015, the alleged onset date, to June 30, 2015, the date last insured. Tr. 12. At step two, the ALJ found that Plaintiff had the following medically determinable impairments: bipolar disorder, lumbar degenerative disc disease, and osteoarthritis of the hands. Tr. 12. However, the ALJ concluded that none of these medically determinable impairments were severe because none of them, alone or in combination, significantly limited Plaintiff's ability to perform basic work-related activities for 12-consecutive months. Tr. 12. Accordingly, the ALJ concluded the analysis and determined that Plaintiff was not disabled. Tr. 17.

**II.    Analysis**

Plaintiff argues that (1) the ALJ failed to weigh the retrospective opinion of Plaintiff's treating physician Gregory Ryan, M.D., (2) the ALJ's determination that Plaintiff has no severe impairments is unsupported by substantial evidence, and (3) the ALJ failed to properly weight Plaintiff's subjective complaints. ECF No. 7-1. The Court disagrees.

### A.     The ALJ's Step Two Analysis is Supported by Substantial Evidence

Plaintiff's primary argument in support of remand is that, at step two, the ALJ improperly weighed opinions from Plaintiff's treating providers in determining that Plaintiff's medically determinable impairments were non-severe, leaving the decision unsupported by substantial evidence.[4] For the reasons that follow, the Court disagrees.

---

[4] Plaintiff also argues that the ALJ's finding that Plaintiff did not suffer from any severe impairments at step two means that Plaintiff can function at all exertional levels, a finding that does not comport with the record. However, the ALJ's conclusion that Plaintiff does not suffer from a severe impairment means only that she is not disabled under the regulations, not that she can perform all work at all levels.

As a general matter, at step two of the sequential analysis, the ALJ is required to determine whether an impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least 12 months limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1509, 404.1520(c). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b).

Although Plaintiff bears the burden of proof at step two, it is not a heavy burden. The Second Circuit has long held that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). Despite this lenient standard, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition 'severe.'" *Taylor v. Astrue*, 32 F. Supp. 3d 253, 266 (N.D.N.Y. 2012) (internal citations omitted). "An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at [step two] when medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985). Such determination is made after the ALJ carefully evaluates the medical findings that describe the impairment and makes "an informed judgment about its limiting effects on the individual's physical and mental ability to perform basic work activities[.]" *Id.* at *4.

In concluding that Plaintiff's medically determinable impairments were non-severe, the ALJ considered, among other things, opinions—all of which were issued after Plaintiff's date last insured—from Plaintiff's treating physician, Gregory Ryan, M.D., and her treating psychiatric nurse practitioner, Marilyn Sullivan, N.P.

Under the rules applicable at the time Plaintiff filed her claim, an ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth his reasons" for doing so. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (the SSA "will always give good reasons" for the weight afforded to a treating source's opinion).

When a treating physician's opinion is not given controlling weight, an ALJ considers the following factors to determine how much weight it should receive: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

With respect to Plaintiff's physical impairments, the ALJ gave sufficiently good reasons for giving little weight to Dr. Ryan's opinions. In his medical source statement dated February 28, 2017, Dr. Ryan opined that Plaintiff could sit and stand/walk for at least six hours (more than two hours at a time), could never lift any amount, and would be absent more than four days per month.

Tr. 241-42.  Two years later, in March 2019, Dr. Ryan opined that Plaintiff could sit and stand/walk for about two hours (thirty minutes at a time), could rarely lift less than ten pounds but never lift over that, could walk five city blocks without rest or pain, and would be absent more than four days per month.  Tr. 740-41.  Simply stated, the record is not consistent with Dr. Ryan's opinions that Plaintiff would be significantly limited.  Rather, the record *supports* the ALJ's conclusion that Plaintiff's impairments were non-severe, *i.e.*, that they were unlikely to significantly limit Plaintiff's ability to work.

For example, and as the ALJ recognized, Plaintiff's hand osteoarthritis and lumbar degenerative disc disease are characterized throughout the record as "mild" or minimal.  Tr. 347, 336-42.  In November 2014, several months before the alleged onset date, Plaintiff exhibited mild neck, back, and shoulder pain, but reported only minimal complaints.  Tr. 336-42.  On March 4, 2015, several days after the alleged onset, Plaintiff indicated that she "generally felt well," exhibiting no relevant abnormalities.  Tr. 327.  On June 24, 2015, Plaintiff reported to Dr. Ryan stiffness in her hands, but no symptoms regarding her back.  Tr. 322.

Similarly, as the ALJ recognized, Plaintiff underwent a conservative course of treatment that is not consistent with severe impairments.  On June 24, 2015, after failing to follow-up on a previous referral, Dr. Ryan referred Plaintiff for a second time to a rheumatology consult with Andreea Coca, M.D.  Tr. 324.  On August 31, 2015, Dr. Coca diagnosed Plaintiff with osteoarthritis, but noted that "there is nothing in her history to make [Dr. Coca] suspicious for an underlying inflammatory arthritis."  Tr. 495.  Dr. Coca spoke to Plaintiff about the possibility of a localized steroid injection and physical therapy, but Plaintiff declined both.  Tr. 495.  There is no indication that Plaintiff followed up regarding additional treatment.

The ALJ also recognized that Plaintiff's work as a childcare provider did not support her claims regarding the severity of her impairments. Prior to the alleged onset date, Plaintiff worked full-time as a childcare provider. Tr. 702. In March 2015, during the disability period, Plaintiff told NP Sullivan that she "plan[ed] to take a year off from child care" but would "return later to work with children again." Tr. 703. In June 2015, Plaintiff told NP Sullivan that she was "taking time off from child care and enjoying the leisure time," which allowed her to plan her wedding and move to a new home. Tr. 701. Contrary to Plaintiff's reports that she stopped working because of her severe impairments, Plaintiff's own statements suggest that Plaintiff exited the workforce voluntarily and for non-medical reasons.

Finally, and importantly, Plaintiff's activities of daily living do not support Dr. Ryan's opinions, and, like the other evidence in the record, *do* support the ALJ's conclusion that Plaintiff's impairments are non-severe. Plaintiff indicated that she was able to garden, prepare for her wedding, clean her house, and host garage sales. Tr. 307, 695, 700, 701.

With respect to Plaintiff's mental impairments, the ALJ gave sufficiently good reasons for giving little weight to NP Sullivan's opinion. In a check-box form dated May 23, 2018, NP Sullivan[5] opined that Plaintiff had serious limitations in ability to work and coordinate with others, complete a normal workday, accept criticism, deal with normal work stress, set realistic goals, and make plans independently. Tr. 234-35. NP Sullivan further opined that Plaintiff "had minimal capacity to adapt to changes" and would be absent for more than four days per month. Tr. 236. Again, the record is not consistent with NP Sullivan's opinion regarding Plaintiff's extreme

---

[5] Although, as a nurse practitioner, NP Sullivan is not an "acceptable" medical source as defined in 20 C.F.R. § 404.1513(a), "the ALJ should consider information from 'other sources,' such as social workers, which 'may also help . . . to understand how [the claimant's] impairment affects [her] ability to work." *Krach v. Comm'r of Soc. Sec.*, No. 3:13-CV-1089 GTS/CFH, 2014 WL 5290368, at *6 (N.D.N.Y. Oct. 15, 2014) (quoting 20 C.F.R. § 404.1513(e)). As explained below, the ALJ fulfilled this obligation.

limitations.  Rather, the record *supports* the ALJ's conclusion that Plaintiff's mental impairments were non-severe, *i.e.*, that they were unlikely to significantly limit Plaintiff's ability to work.

As the ALJ acknowledged, there is no support in the record for NP Sullivan's opinion.  NP Sullivan's notes demonstrate that Plaintiff's bipolar disorder was in remission and controlled.  Tr. 701-03.  In a note from a July 2015 visit, NP Sullivan indicates that Plaintiff's mood was "good," that she was enjoying wedding and shower preparations, and that, while she was not currently working, she would "likely look for something different after the wedding."  Tr. 700.  Additionally, as explained above, Plaintiff's activities of daily living do not suggest significant limitations.

Although the ALJ did not explicitly address this point, the Court pauses to acknowledge that the opinions from Dr. Ryan and NP Sullivan are retrospective.  "As a general rule, medical opinions given after the date that the claimant's insured status expired are only taken into consideration if such opinions are relevant to Plaintiff's condition prior to that date." *Patterson v. Comm'r of Soc. Sec.*, No. 1:18-CV-698-DB, 2019 WL 5419535, at *3-4 (W.D.N.Y. Oct. 23, 2019) (finding that ALJ did not err in failing to consider opinion rendered after period of disability where opinion did not relate to period of disability and substantial evidence supported RFC).  Here, all three opinions were rendered *after* the alleged period of disability.  Moreover, no opinion specifies how it is relevant to Plaintiff's condition during the alleged period of disability.  *See Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999) ("While the existence of a pre-existing disability can be proven by a retrospective opinion, such an opinion must refer clearly to the relevant period of disability and not simply express an opinion as to the claimant's current status.").

### B. The ALJ Properly Considered Plaintiff's Credibility

Finally, the Court rejects Plaintiff's threadbare argument that the ALJ failed to evaluate Plaintiff's subjective complaints.

It is well-settled that

> [t]he Social Security regulations require a two-step process for the ALJ to consider the extent to which subjective evidence of symptoms can reasonably be accepted as consistent with the medical and other objective evidence. *Brownell v. Comm'r of Soc. Sec.,* No. 1:05-CV-0588 (NPM/VEB), 2009 WL 5214948, at *3 (N.D.N.Y. Dec. 28, 2009). First, the ALJ considers whether the medical evidence shows any impairment "which could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if an impairment is shown, the ALJ must evaluate the "intensity, persistence, or functionally limiting effects" of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(b). When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

*Camille v. Colvin*, 104 F. Supp. 3d 329, 344 (W.D.N.Y. 2015).

The ALJ properly applied the two-step analysis here and concluded, correctly, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not consistent with the medical evidence of record. Tr. 13. Plaintiff argues that the ALJ failed to identify any records that are inconsistent with Plaintiff's allegations. As explained in the preceding section, nearly *all* of the evidence in the record is inconsistent with Plaintiff's allegations. Moreover, where, as here, "the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints." *Morales v. Berryhill*, 484 F. Supp. 3d 130, 150 (S.D.N.Y. 2020) (quoting another source).

9

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 7, is DENIED, and the Commissioner's motion for judgment on the pleadings, ECF No. 8, is GRANTED. The ALJ's decision is AFFIRMED. The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 23, 2021
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York